STATE OF WEST VIRGINIA

**FILED**

**April 12, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **M.Z.-1, M.Z.-2, M.Z.-3, and M.Z.-4**

**No. 15-0818** (Kanawha County 13-JA-13, 13-JA-14, 13-JA-15, & 13-JA-16)

## MEMORANDUM DECISION

Petitioner Father M.Z.-5, by counsel Kenneth R. Starcher, appeals the Circuit Court of Kanawha County's December 17, 2014, order terminating his parental rights to M.Z.-1, M.Z.-2, M.Z.-3, and M.Z.-4.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem, W. Jesse Forbes, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating his parental rights without requiring that the DHHR seek reunification of the family and without the guardian preparing a written report. Petitioner additionally alleges ineffective assistance of his counsel below.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2013, the DHHR filed an abuse and neglect petition against the parents and alleged that two children, M.Z.-1 and M.Z.-2, disclosed to a counselor that petitioner locked them in a closet for hours at a time. This disclosure was confirmed by their sister, M.Z.-3. Additionally, M.Z.-2 disclosed that petitioner would punish the children by putting them in the bathroom with pictures of "scary monster faces" on the floor and then locking the children inside with the lights turned off. The petition further alleged that petitioner made threats against the children's counselor, including that he would make her disappear. The petition also alleged that petitioner previously made threats against a different counselor at the children's school and that

---

[1]Because the children and petitioner share the same initials, we will refer to the children as M.Z.-1, M.Z.-2, M.Z.-3, and M.Z.-4, respectively, and to petitioner as M.Z.-5 throughout the memorandum decision.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

law enforcement intervention was required. Additionally, the DHHR addressed other inappropriate forms of punishment in the home and the children's lack of hygiene in the petition. At the subsequent preliminary hearing, the DHHR advised that it would offer petitioner services, including supervised visitation, parenting and adult life skills education, and a parental fitness evaluation.

During an adjudicatory hearing in April of 2013, petitioner stipulated to abuse and neglect. Specifically, petitioner stipulated to excessive means of discipline. Petitioner moved the circuit court for a post-adjudicatory improvement period, which the circuit court granted. In December of 2014, the circuit court held a dispositional hearing, during which the psychiatrist that evaluated three of the children testified that reunification with petitioner was not in the children's best interests. Specifically, the evidence established that the children suffered from Post-Traumatic Stress Disorder ("PTSD") as a result of petitioner's abuse, and the psychiatrist believed the children would be unable to improve in this regard while residing with petitioner. The psychiatrist also testified to deterioration in the children's well-being after visitation with petitioner. A Child Protective Services ("CPS") worker testified to petitioner's compliance with services during his improvement period and ultimately determined that he had not successfully completed the same because of his lack of housing and lack of food for the children. The evidence further established that, as the case progressed, the children began to refuse to attend visitation with petitioner. Petitioner also testified and recanted his earlier stipulation to abusing the children. Specifically, he testified that his prior stipulation was "an accident" and that he "[didn't] really admit to neglect and abuse." Ultimately, the circuit court terminated petitioner's parental rights to the children. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, the Court finds no error in regard to petitioner's allegation that the DHHR failed to seek reunification of the family as its primary goal. While it is true that West Virginia Code § 49-6-5(a) requires that a family case plan indicate how the DHHR intends to "facilitate return of

the child to his or her own home," on appeal petitioner fails to identify any evidence that the DHHR did not meet this burden. The record is clear that two family case plans were filed below, and both clearly set forth specific services, including parenting and adult life skills education, that petitioner was to undergo in order to correct the conditions of abuse and neglect in the home. The case plans also clearly indicated specific goals for petitioner, including obtaining housing and maintaining employment, such that the children could be returned to the home.

We have previously held that "[i]n formulating the improvement period and family case plans, courts and social service workers should cooperate to provide a workable approach for the resolution of family problems which have prevented the child or children from receiving appropriate care from their parents." Syl. Pt. 5, in part, *In re Desarae M.*, 214 W.Va. 657, 591 S.E.2d 215 (2003) (quoting Syl. Pt. 4, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991)). While petitioner argues on appeal that the family case plan did not provide him with an adequate opportunity to resolve the conditions of abuse and neglect, the Court does not agree. As noted above, the family case plan clearly set forth specific goals for petitioner to achieve and the services that would allow petitioner to correct the conditions of abuse and neglect in the home. As such, it is clear that the DHHR's case plans met the statutory requirements for such filings and further offered petitioner a "workable approach" to resolve the issues in the home.

Moreover, the record is clear that it was petitioner's lack of compliance, not a deficient family case plan, that necessitated termination of his parental rights. Not only did petitioner fail to comply with the terms of his improvement period below, but he recanted his prior stipulation to abusing the children at the dispositional hearing. Petitioner specifically testified that his prior stipulation was "an accident" and that he "[didn't] really admit to neglect and abuse." We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Based upon this holding, it is clear that petitioner's failure to acknowledge the underlying conditions of abuse and neglect in the home rendered him unable to remedy those conditions. Moreover, the record is clear that the circuit court was presented with sufficient evidence upon which to terminate petitioner's parental rights.

Pursuant to West Virginia Code § 49-6-5(b)(3), there is no reasonable likelihood the conditions of abuse or neglect can be substantially corrected when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." Based upon petitioner's willful refusal to acknowledge the conditions of abuse and neglect in the home, coupled with his admission that his limited participation in services below was simply "to make everyone happy," the circuit court had

sufficient evidence upon which to find there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect. Further, based on expert testimony that the children suffered PTSD as a result of petitioner's abuse, were scared to return home, and that doing so would be detrimental to their well-being, the circuit court also had sufficient evidence to find that termination of petitioner's parental rights was in the children's best interests. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings. Further, we have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 4, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). As such, it was not error for the circuit court to terminate petitioner's parental rights.

As to petitioner's argument that the circuit court erred in terminating his parental rights without requiring the guardian to file a written report, we find no reversible error. Petitioner is correct that Appendix A to the Rules of Procedure for Child Abuse and Neglect Proceedings requires guardians ad litem to "[s]ubmit a written report to the court and provide a written copy to all parties at least five . . . days prior to the dispositional hearing . . . ." Further, the guardian in this matter admits that his report was not provided to the parties five days prior to the dispositional hearing, although he cites to the record to show that he did submit a copy to the circuit court the day of the dispositional hearing and that the same was filed two days later. However, under the specific facts of this case, the Court declines to grant petitioner relief on this issue.

We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). Upon our review, the Court finds that the guardian's failure to provide the parties with his written report in advance of the dispositional hearing does not constitute a substantial disregard or frustration of the applicable rules and statutes such that vacation of the order terminating petitioner's parental rights is necessary. This is especially true in light of the fact that the guardian had previously been clear about his position regarding termination of petitioner's parental rights, and petitioner's willful

failure to acknowledge the truth of the basic allegations against him. For these reasons, petitioner is entitled to no relief in this regard.

Finally, the Court finds petitioner is entitled to no relief in regard to his claim of ineffective assistance of counsel below. It is important to note that the Court has never recognized a claim of ineffective assistance of counsel in an abuse and neglect proceeding. Moreover, it is clear that petitioner's counsel below provided him with effective representation. In support of this assignment of error, petitioner cites two instances of alleged ineffective assistance by trial counsel. The first is based on the allegation that his counsel was ineffective for failing to object to the family case plan and its alleged insufficiency. However, as outlined above, the family case plans in this matter were sufficient to provide petitioner with a goal for addressing the issues of abuse and neglect in the home. As such, counsel's failure to object to these case plans does not constitute ineffective assistance of counsel. The second instance of alleged ineffective assistance was when counsel failed to object to petitioner's testimony regarding "his religious beliefs and space travel." According to petitioner, his own comments were inadmissible because they were irrelevant, and "it is unlikely [his parental] rights would have been terminated" absent these comments' admission. The Court, however, finds no merit to this argument. The circuit court's order terminating petitioner's parental rights makes no mention of petitioner's isolated testimony regarding his thoughts on space travel. Conversely, the circuit court sets forth ample evidence that petitioner's abuse of the children and failure to acknowledge the same necessitated termination of his parental rights. For these reasons, the Court finds that petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 17, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: **April 12, 2016**

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II